IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 22, 2008 Session

## STATE OF TENNESSEE EX REL CLAUDE CAIN, ET AL. v. CITY OF CHURCH HILL, TENNESSEE

**Appeal from the Circuit Court for Hawkins County**
**No. CV-10      Kindall T. Lawson, Judge**

---

**No. E2007-00700-COA-R3-CV  - FILED SEPTEMBER 30, 2008**

---

The State of Tennessee, proceeding on relation of six individuals and one entity (who, for ease of reference, will collectively be referred to as "the plaintiffs"), sought mandamus in 2002 to force the City of Church Hill ("the City") to extend a sewer line to the individuals' homes.  The individuals are residents of a neighborhood in Hawkins County that was annexed by the City in 1988.  They claim that the City failed to adhere to the plan of services adopted as part of the annexation process, and that the plaintiffs are therefore entitled to mandamus under Tenn. Code Ann. § 6-51-108 (2005).  The plan of services adopted in 1988 states that "[a] sanitary sewer system will be provided as soon as economically feasible."  The trial court granted the plaintiffs summary judgment, finding that the long delay in installing a sewer system, which continued at the time of trial, was unreasonable, and that there were no disputed issues of material fact preventing the court from granting mandamus under § 6-51-108.  However, the court ordered a trial on the issue of how quickly the City could reasonably install the sewer line.  At the conclusion of this limited-purpose trial, the court ordered the City to extend sewer service to the plaintiffs within 16 months.  The City appeals.  We vacate the trial court's grant of summary judgment and remand for further proceedings.

**Tenn R. Civ. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

K. Erickson Herrin, Johnson City, Tennessee, for the appellant, City of Church Hill, Tennessee.

Phillip L. Boyd, Rogersville, Tennessee, for the appellees, Claude Cain, Sandra Cain, Robert Fraley, Mary Fraley, Carl Bruner, Ollie Bruner, and A. J. Metler Trucking Company.

**OPINION**

The plaintiffs' original complaint, filed in September 2002, sought mandamus on an implied contract theory, while making no mention of Tenn. Code Ann. § 6-51-108. The complaint asserted various facts relating to their implied contract theory, including alleged statements by elected officials, recommendations by a town committee, and a May 2000 city council resolution that the plaintiffs say approved the sewer project in question.[1] The complaint alleged that "because this . . . matter has been previously voted on and approved, it is no longer a matter of discretion but, in fact, is ministerial in its nature." According to the City's brief, "the case came on for trial [on August 22, 2005], however, after preliminary arguments and limited testimony, the court suspended the trial to allow the plaintiffs an opportunity to amend the Complaint [to add the Tenn. Code Ann. § 6-51-108 cause of action], a Motion to Amend being filed on November 1, 2005 [and subsequently granted]." The record on appeal does not contain a transcript or other direct record of any August 22, 2005, hearing, and thus we have no knowledge[2] of what, if anything, transpired at this purported hearing. What is clear from the record is that, from November 2005 onward, the plaintiffs' Tenn. Code Ann. § 6-51-108 claim – not an implied contract claim – has been the singular focus of this case. When the plaintiffs moved for summary judgment in February 2006, they did so on the basis that they "are entitled to summary judgment pursuant to Tennessee Code Annotated § 6-51-108" – not pursuant to an implied contract theory.

Tenn. Code Ann. § 6-51-108(d) states, in pertinent part, as follows:

> An aggrieved property owner in the annexed territory may bring an action in the appropriate court of equity jurisdiction to enforce the plan of services at any time after one hundred eighty (180) days after an annexation by ordinance takes effect and until the plan of services is fulfilled . . . If the court finds that *the municipality has materially and substantially failed to comply with its plan of services* for the territory in question, then the municipality shall be given the opportunity to show cause why the plan of services was not carried out. If the court finds that the municipality's failure is due to natural disaster, act of war, act of terrorism, or reasonably unforeseen circumstances beyond the control of the municipality that materially and substantially impeded the ability of the municipality to carry out the plan of services, then the court shall alter the timetable of the plan of services so as to allow the municipality to comply with the plan of services in a reasonable time and manner. If the court finds that the municipality's failure was not due to natural disaster, act of war, act

---

[1] The city disputes this, claiming that the resolution only set in motion a broader sewer project that would not necessarily extend service all the way to the plaintiffs' homes.

[2] It is well settled that "the recitation of facts and argument contained in a brief submitted to this Court . . . are not evidence . . . [and] can[not] be considered in lieu of a verbatim transcript or statement of the evidence and proceedings." *State v. Draper*, 800 S.W.2d 489, 493 (Tenn. Crim. App. 1990)

of terrorism, or reasonably unforeseen circumstances beyond the control of the municipality that materially and substantially impeded the ability of the municipality to carry out the plan of services, then *the court shall issue a writ of mandamus to compel the municipality to provide the services contained in the plan*, [and] shall establish a timetable for the provision of the services in question[.]

(Emphasis added.) The relevant portion of the plan of services for plaintiffs' neighborhood, adopted by the City in 1988 as part of the annexation process, reads as follows:

H. Sewer System

A sanitary sewer system will be provided as soon as economically feasible. A study will have to be conducted to determine cost.

(Underlining in original.) Reading the statute and the plan together, it is clear that a prerequisite to any proper grant of summary judgment for the plaintiffs on the basis of Tenn. Code Ann. § 6-51-108 would be a finding that there were no disputed issues of material fact with regard to the question of whether the City "has materially and substantially failed to comply with" the requirement that "[a] sanitary sewer system . . . be provided as soon as economically feasible."

In opposing the summary judgment motion, the City argued first that Tenn. Code Ann. § 6-51-108 was inapplicable to this case because the law was passed in 1998, ten years after the annexation in question. The City contended – and continues to contend on appeal – that the statute should not be applied retroactively. In the alternative, the City argued that, even if § 6-51-108 applies, the City has *not* materially or substantially failed to comply with the plan of services. In response to the plaintiffs' assertion, in their Tenn R. Civ. P. 56.03 statement of material facts, that "[i]t is undisputed the plan of services has not been implemented though same was adopted more than sixteen years ago," the City responded:

Objection. The plan of services provides for a sewer line to be constructed "when economically feasible". The extension of a sewer line in the area demanded by the plaintiffs is not "economically feasible" because of the extraordinary cost of construction of this particular sewer project in comparison to the low number of available users from which to collect a "tap fee". [*See*, Affidavit Sandidge; deposition testimony of Engineer Matthew Lane, Ex. "A"]. Therefore, the plan of services has been implemented in accord with and consistent with the provisions for the plan of services.

Further, in response to the plaintiffs' statement that "the plan of services should have been implemented in that from 1989 to the present is a reasonable time for sewer services to be provided the residents of AFG Road area," the City responded:

Objection. The plan of services provides for sewer service to be constructed when "economically feasible" not "within a reasonable time". The sewer line demanded by the plaintiffs is not "economically feasible". [*See*, affidavit of Sandidge; deposition testimony of Engineer Matthew Lane, Exhibit "A"]. Mr. Sandidge's Affidavit establishes that projected revenue from tap fees would result in, a collection of $16,350.00. Engineer Lane's deposition establishes that to extend a gravity flow sewer line beyond Minor's Mobile Home Park a sufficient distance for Mr. Cain and other plaintiffs to have access would cost *at least* an additional $100,000.00 over and above the $202,025.00 first phase, sewer project on Burlington Road. [Lane depo., pp. 51-53].

(Emphasis in original.)

A hearing was held on the plaintiffs' summary judgment motion in May 2006. At the conclusion of the hearing, the court announced the following memorandum opinion:

Okay, here is the way I am going to decide this case. I may be wrong. I have been wrong before. But the way I see it, I think the law, TCA-6-51-108 appears to have been enacted to address this problem and possibly other things. The legislature has not given us any guidance as to how they intended it to apply; whether they intended it to be applicable and how that was to work. But they did insert some language that puts time frames on these things and procedures to follow. I believe the law applies in this case, and I so rule.

Because I think it does, I am requiring the issue of a Writ of Mandamus. That is my decision right or wrong. There it is.

The court further stated as follows, in its written order:

The Court FINDS that Tenn. Code Ann. § 6-51-108 should be applied to the annexation relevant to the case before the court. The Court further FINDS that the sewer line at issue should be installed within a reasonable time frame since the applicable Plan of Services is vague.

It is therefore ORDERED that a Writ of Mandamus shall issue against the Town of Church Hill, however, it will be necessary for the Court to conduct a hearing and, based on the factual evidence presented at such hearing, establish a reasonable time for the sewer line at issue to be constructed.

-4-

(Capitalization in original.)  As can be seen, the court declared that the key language in the plan of services – "as soon as economically feasible" – is "vague," and the court effectively replaced this language with the phrase "within a reasonable time frame."

The resulting hearing to "establish a reasonable time" for construction under the mandamus order was an effort to comply with the directive of Tenn. Code Ann § 6-51-108 that a court ordering mandamus must "establish a timetable for the provision of the services in question."  The City requested permission to file an interlocutory appeal, in hopes of avoiding the time and expense of this timetable hearing.  The request was denied.  The case therefore proceeded to a bench trial, which lasted three days.  Throughout the proceedings, the court repeatedly reminded the parties – particularly counsel for the City – that the trial was for the limited purpose of establishing a "reasonable time frame" for the already-granted writ of mandamus.  For example, as the City's attorney outlined his plan for presenting his case, he had the following exchange with the court:

> MR. HERRIN: . . . I really need Mayor Noe's deposition only to perhaps clarify conversations that Mr. Cain and Mayor Noe had. . . .
>
> THE COURT:  Is that going to be relevant?  Really, we are just here to figure out what the time line is and not whether some deal was made.
>
> MR. HERRIN:  We'll start with the genesis of the 19[8]8 annexation and at least establish what the understanding was at the time of that annexation with respect to this sewer line.
>
> THE COURT:  It is my impression we've already crossed that bridge. . . . Been there, done that. . . . I don't think I need that information for what I have to do. . . . I intend to zero in on the time line question and not go very far afield from it.  I want to hear about the time line.

Later, the court stated: "Let's try to confine it to the time . . . I am going to have to insist that you focus on the issue before the court. . . . Seems to me this issue is not all that complicated."  Still later, the court told City's attorney:

> Unless you are telling me something about the time frame, I just can't hear it. . . . [A]sk questions about . . . how much time would be reasonable in which to plan and implement this project.  I think what I am hearing from your side is that you think it is impossible to do it at all.

As can be seen, the trial court refused to consider evidence that the sewer extension was "impossible" – that is to say, economically unfeasible – and insisted, again and again, that the construction timeline was the only issue before court.

Strangely, however, the court's judgment seems to contradict these statements, and to retroactively expand the scope of the trial. The judgment states as follows:

> At the conclusion of the trial on December 20, 2006, the Court, after hearing all testimony, reviewing all exhibits, and from the entire record in the case does hereby find and adjudge that:
>
> 1. The City of Church Hill annexed the AFG/Burlington Road area in 1988;
>
> 2. The City of Church Hill adopted a plan of services which included sewer which plan used the term "when economically feasible" at the same time of annexation proceedings.
>
> 3. The time frame and the language contained in the plan of services is very nonspecific and the Court interprets same to be within a reasonable time.
>
> 4. The eighteen year period without implementing the plan of services with reference to the sewer is not a reasonable time.
>
> 5. There was no evidence of natural disaster, act of war or act of terrorism so as to justify the municipality's failure to implement the plan of services. The evidence presented on reasonably unforeseeable circumstances beyond the municipality's control was considered by the Court; however, the Court finds that the circumstances relied upon by defendant were reasonably foreseeable and, therefore, none of the provisions of T.C.A. § 6-51-101, *et seq*., and particularly, referencing § 6-51-102 and § 6-51-108, apply as enumerated by the statute. The Court, therefore, confirms its Writ of Mandamus and directive to establish a time table.
>
> 6. The time table as set forth in the above statutes to install sewer line services shall be a total of sixteen months.
>
> IT IS, ACCORDINGLY, THE JUDGMENT OF THE COURT THAT:
>
> 1. The previous granting of the Writ of Mandamus is hereby confirmed.
>
> 2. The defendant is hereby ordered to implement the plan of services with reference to the installation of sewer service within sixteen months from the entry of this Judgment.

(Capitalization in original.) Only factual finding number 6 and decree number 2 are actually within the announced scope of the bench trial. All the other points quoted above were, in fact, decided on summary judgment, not at trial. In particular, mandamus had already been granted – pending the single issue of the timetable – and did not need to be "confirmed." Moreover, although the judgment asserts that the trial court reached all of the above-stated conclusions based on "all testimony . . . all exhibits, and . . . the entire record in the case," the transcript makes clear that the court did not allow the City a hearing on any issue other than the timetable question, which was the trial's stated purpose.[3] Accordingly, notwithstanding the language of the judgment, we regard all issues except the timetable as having been decided on summary judgment, on the basis of the record at that point in the case's procedural history – *not* at trial, based on the trial record. Since the timetable is not at issue on appeal, we proceed to review this case under the applicable summary judgment standard.

## II.

On an appeal from a grant of summary judgment, "[o]ur inquiry involves purely a question of law; therefore, we review the record without a presumption of correctness to determine whether the absence of genuine issues of material facts entitle[s] the [moving party] to judgment as a matter of law." **Robinson v. Omer**, 952 S.W.2d 423, 426 (Tenn.1997). "Tenn. R. Civ. P. 56.03 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts." **Bain v. Wells**, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted). The plaintiffs, as the moving party, have the initial burden. Only if the plaintiffs succeed in conclusively establishing their claim is the City required to produce evidence to support its position, whether by rehabilitating its evidence, pointing to new or overlooked evidence, or proving that further discovery is necessary. **McCarley v. West Quality Food Serv.**, 960 S.W.2d 585, 588 (Tenn. 1998).

The City's first issue on appeal is whether the trial court erred by applying Tenn. Code Ann. § 6-51-108 retroactively. The City argues that the general presumption against applying laws retroactively, *see, generally, **Nutt v. Champion Intern. Corp.***, 980 S.W.2d 365, 368 (Tenn. 1998), should prevent retroactive application here, since, as the trial court put it, "[t]he legislature has not given us any guidance as to how they intended it to apply; whether they intended it to be applicable and how that was to work." However, as the plaintiffs correctly point out, this presumption is reversed "for statutes which are remedial or procedural in nature. Such statutes apply retrospectively . . . unless the legislature indicates a contrary intention or immediate application would produce an unjust result." **Kee v. Shelter Ins.**, 852 S.W.2d 226, 228 (Tenn. 1993). The right to enforce a plan of services via mandamus under Tenn. Code Ann. § 6-51-108(d) is clearly a remedial right, and we think the statute as a whole is essentially "remedial or procedural" in nature. We also see no reason

---

[3] For instance, although the judgment asserts that the court "considered" the City's "evidence . . . on reasonably unforeseeable circumstances beyond the municipality's control," the transcript makes abundantly clear that the City was *not*, in fact, given an opportunity to "justify [its] failure to implement the plan of services" – nor, for that matter, to demonstrate that it did not "fail" at all. Those issues, as the court stated repeatedly during trial, had already been decided; the trial was focused only on the timetable question.

to conclude that retroactive application in this case "would produce an unjust result." Accordingly, we conclude that the statute is applicable to this case.

However, in applying Tenn. Code Ann. § 6-51-108(d) to the specific plan of services at issue herein, the trial court appears to have skirted over the core issue: whether the City "materially and substantially failed to comply" with the provision in question, which states as follows: "A sanitary sewer system will be provided as soon as economically feasible. A study will have to be conducted to determine cost." The trial court declared this provision "vague," and on that basis, essentially replaced the phrase "as soon as economically feasible" with the phrase "within a reasonable time." The court then concluded that an 18-year delay is "unreasonable." In essence, the court held that the City materially and substantially failed to comply with a requirement that sewer service be provided within a reasonable time after annexation. But no such requirement ever existed, because *that is not what the plan of services says*.

The trial court's re-interpretation of the plan of services completely alters that document's meaning. The concept of economic feasibility, as applied to a given set of facts, may be open to interpretation, but it is not so "vague" that "as soon as economically feasible" can be interpreted as meaning the same thing as "within a reasonable time." These are distinct concepts. Significantly, one carries with it an implicit guarantee that the proposed sewer service *will eventually* be provided, while the other does not. The phrase "as soon as economically feasible" does not foreclose the possibility that the service will *never* be economically feasible. This is all the more true when the next sentence states that "[a] study will have to be conducted to determine cost," indicating that the drafters of the plan *do not yet know* what the cost – a key ingredient of economic feasibility – will be.

Further bolstering this conclusion is the language of other parts of the plan of services – language that *does* guarantee various other services. For instance, the plan states that emergency road maintenance "will begin on the effective date of annexation"; routine road maintenance "will begin . . . when funds from the state gasoline tax based on the annexed population are received from the state"; trash collection "will [begin] within one month of the effective date of annexation"; street name signs "where needed will be installed within approximately twelve (12) months after the effective date of annexation"; and residential street lights "will be installed . . . within approximately twenty-four (24) months after the effective date of annexation." All of these services are promised within finite, ascertainable periods of time. Even the adoption of zoning ordinances, although delayed until a completion of a "study," is not *contingent* upon the results of that study:

> The planning and zoning jurisdiction of the town will extend to the annexed area on the effective date of annexation. Town planning will thereafter encompass the annexed area. Some study will be required before specific zoning can be adopted which should be completed within approximately six months after the effective date of annexation.

This provision leaves no doubt that specific zoning rules *will* eventually be adopted ("[t]own planning *will thereafter* encompass the annexed area"). The promised study is a necessary

prerequisite, but the results will merely set the parameters for the nature of the eventual zoning rules – not determine whether such rules can be passed at all. By contrast, with regard to the sewer system, a "study . . . to determine cost" obviously has the potential to show that the studied action is *not* "economically feasible." Thus, the sewer provision is the only portion of the plan of services that is wholly indefinite, hinging upon a contingency – economic feasibility – that may or may not occur. We must assume that the plan's drafters intended the plain meaning of their words. We therefore conclude that this unique aspect of the sewer provision was not a coincidence, but rather reflected an intentional decision to refrain from promising sewer service with the same sort of unconditional language that was used for other matters elsewhere in the plan. Accordingly, the court erred when it interpreted this provision as an unconditional promise to provide server services within a "reasonable time."

Because the plan of services makes only a conditional promise of sewer service – conditioned upon economic feasibility – a proper grant of summary judgment for the plaintiffs would necessarily require a finding that there was no disputed issue of material fact regarding the economic feasibility of the sewer service. Yet no such finding was ever made. Indeed, the plaintiffs did not even assert the project's economic feasibility in their Tenn R. Civ. P. 56.03 statement of material facts. They did present some evidence, via affidavits attached to their motion for summary judgment, that the project was economically feasible, but this evidence certainly was not undisputed. In fact, it was *hotly* disputed. That much is clear from City's previously quoted "objections" to the plaintiffs' Rule 56.03 statement, in which the City asserted that "[t]he sewer line demanded by the plaintiffs is not 'economically feasible,'" and cited evidence to support this conclusion.[4] The plaintiffs simply did not demonstrate, for summary judgment purposes, that they were entitled to a judgment "on the papers."

We also reject the plaintiffs' attempt to revive their implied contract theory of recovery. Much ink is spilled, by both sides, regarding matters that relate only to the implied contract theory: what statements were, or were not, made by which city officials; what actions the city council took, or did not take; whether the completion of the sewer line constitutes only a ministerial act, because of prior city council resolutions, or whether it remains a discretionary act; and so forth. None of those issues are germane to this appeal, because summary judgment was requested and granted *solely* on the basis of the Tenn. Code Ann. § 6-51-108 theory, which in turn depends *solely* on whether the plan of services has, by its terms, been violated – not on any alleged promises in later years, or on the common law distinction between ministerial and discretionary acts. These other matters have not been the subject of a final judgment by the trial court, and we express no opinion on them.

We also, of course, express no opinion as to the eventual result of this litigation after further proceedings. We simply hold that summary judgment for the plaintiffs was improper on this record and remand the case for further proceedings. In doing so, we must also direct the trial court to disregard the results of the post-summary judgment bench trial, which was conducted on the false premise that the City's violation of the plan of services had already been conclusively established.

---

[4] The City also attempted to prove the project's economic infeasibility during the timeline hearing, though these efforts were rebuffed by the court, as noted earlier.

All proceedings that occurred after the grant of summary judgment are rendered moot by our reversal of that grant.

## III.

The judgment of the trial court is vacated. Costs on appeal are taxed to the appellees, Claude Cain, Sandra Cain, Robert Fraley, Mary Fraley, Carl Bruner, Ollie Bruner, and A. J. Metler Trucking Company. This case is remanded to the trial court for further proceedings, consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE